

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

******************************************************************************

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR 11-10029 |
| | * | |
| Plaintiff, | * | ORDER DENYING |
| -vs- | * | MOTION TO DISMISS |
| | * | |
| WINONA DANLEY, | * | |
| a/k/a MARLYS DANLEY, | * | |
| | * | |
| Defendant. | * | |

******************************************************************************

## INTRODUCTION

Defendant is charged with assaulting, resisting, or impeding Thomas Adams, a Sisseton-Wahpeton Sioux Tribal Police Officer, in violation of 18 U.S.C. § 111(a)(1). Section 111(a)(1) proscribes assaults upon persons designated in 18 U.S.C. § 1114. Those persons designated in § 1114 are "any officer or employee of the United States or of any agency in any branch of the United States Government." Defendant filed a motion, Doc. 12, to dismiss the indictment, contending that the government cannot establish one of the elements of the offense - that officer Thomas Adams was a designated federal officer. In order to obtain a conviction at trial, the government will be required to prove beyond a reasonable doubt that, *inter alia*, officer Adams was a federal officer. United States v. Drapeau, 644 F.3d 646, 652 (8th Cir. 2011).

## BACKGROUND

In 1921, Congress enacted the Snyder Act which required the Bureau of Indian Affairs ("BIA") of the United States Department of the Interior to expend moneys to provide, *inter alia*, for tribal police. The BIA has thus historically been the primary provider of law enforcement services in Indian Country. United States v. Medearis, 775 F. Supp. 2d 1110, 1118 n. 2 (D.S.D. 2011); United States v. Schrader, 10 F.3d 1345, 1350 (8th Cir. 1993). In 1975, Congress enacted the Indian Self Determination and Education Assistance Act of 1975 ("ISDEAA"), Public Law 93-638, 25 U.S.C. § 450f. Pursuant to the ISDEAA, the BIA was compelled, if requested by a

tribe, to enter into contracts to provide, *inter alia*, law enforcement services in Indian country. 25 U.S.C. § 450f(a)(1)(B). Those contracts were known as "638 contacts" after the public law number authorizing the contracts.

It was not until the enactment of the Indian Law Enforcement Reform Act of 1990 ("ILERA") that Congress specifically authorized the Secretary of the Interior, acting through the BIA, to enforce the Major Crimes Act in Indian Country. 25 U.S.C. § 2802(c)(1). That Act established within the BIA an "Office of Justice Services" responsible for carrying out and implementing law enforcement functions in Indian Country. 25 U.S.C. § 2802(b). Additional responsibilities of that office include "the enforcement of Federal law" and "in cooperation with appropriate Federal and tribal law enforcement agencies, the investigation of offenses against criminal laws of the United States." 25 U.S.C. § 2802(c). The Act also established within the Office of Justice Services a separate "Branch of Criminal Investigations" responsible not for "routine law enforcement and police operations of the Bureau in Indian country" but instead for the "investigation, and presentation for prosecution, of cases involving violations of section 1152 and 1153 of Title 18, within Indian Country." 25 U.S.C. § 2802(d).

The BIA was authorized to enter into memoranda of agreement ("MOA") with other government agencies, including Indian tribes, to assist the BIA in carrying out its federal law enforcement functions in Indian Country. United States v. Bettelyoun, 16 F.3d 850, 852 (8th Cir. 1994); 25 U.S.C. § 2804(a)(1). The ILERA authorized the Secretary to issue regulations to implement the enforcement of federal criminal laws under the ILERA. 25 U.S.C. 2805. The Secretary issued regulations implementing the ILERA in 1997. *See* 25 C.F.R. Part 12, 62 Fed. Reg. 15610. These regulations set forth the Secretary's authority to issue special "law enforcement commissions" to, *inter alia*, tribal police officers who would be assisting in the enforcement of federal criminal statutes ("SLEC"), 25 C.F.R. § 12.21. Other specific policies and procedures were to be set forth in a BIA manual. 25 C.F.R. § 12.14. Further, "[a]ny law enforcement programs performing duties under the authority of 25 U.S.C. § 2803 must follow the guidelines in the memorandum of understanding and any local United States Attorney's guidelines for the investigation and prosecution of Federal crimes." 25 C.F.R. 12.23.

2

The ILERA reserved the right of a tribe to enter into 638 contracts for investigative functions. 25 U.S.C. § 2802(d). The Secretary was authorized to issue regulations relating to applications for 638 contracts under the Indian Self-Determination Act to perform criminal investigation functions. 25 U.S.C.A. § 2805. The only regulation issued specifically addressing 638 contracts states that the Secretary's regulations "are not intended to discourage contracting of Indian country law enforcement programs under the Indian Self-determination and Education Assistance Act." 25 C.F.R. § 12.12. However, where the BIA enters into 638 contracts for law enforcement services, the BIA "will ensure minimum standards are maintained." *Id.*

The ILERA provides that a tribal officer, "while acting under the authority granted by the Secretary under [25 U.S.C. § 2804(a)] . . . who is not otherwise a Federal employee shall be considered to be an employee of the Department of the Interior only for the purposes of . . . sections 111 and 1114 of Title 18." 25 U.S.C. § 2804(f)(1)(B). Section 2804(a) authorizes the Secretary to enter into MOA for the personnel or facilities of a Federal, tribal, State or other government agency to aid in the enforcement of carrying out in Indian country of a law of either the United States or an Indian tribe that has authorized the Secretary to enforce tribal law." 25 U.S.C. § 2804(a)(1). Such law enforcement officer is authorized "to perform any activity the Secretary may authorize under section 2803." 25 U.S.C § 2804(a)(2). Section 2803 sets forth various "law enforcement" activities the Secretary may charge BIA with performing, including performing any "law enforcement related duty." Thus, "federal employee" includes law enforcement officers performing any law enforcement related duty in Indian country.

Following enactment of the ILERA in 1990, the Eighth Circuit began developing case law concerning whether tribal police and other officers were federal officers for the purposes of 18 U.S.C. § 111. The cases addressed two issues, namely, under what circumstances does a person qualify as an officer of the United States for purposes of 18 U.S.C. § 111 and who, i.e. the district judge or the jury, determines that issue of fact?

## DECISION

I set forth the foregoing history because the Eighth Circuit case law concerning the determination of the element at issue in this case is based upon a sometimes confusing assumption as to how and when the ISDEAA and the ILERA apply and the differences between those Acts.

In United States v. Oakie, 12 F.3d 1426, 1440 (8th Cir. 1993), we are told that whether the "Officer is an officer or employee of the Department of Interior for purposes of § 111 is an issue of law for the court." we are told that "a tribal law enforcement officer who has been designated a BIA Deputy Special Officer is entitled to the protections of § 111 when performing the federal functions he or she has been deputized to perform." *Id.* Oakie went on to hold that whether the officer "was in fact a BIA Deputy Special Officer, and whether he was performing federal 'investigative, inspection, or law enforcement functions' at the time of the assaults, were fact questions for the jury." *Id.*

In Oakie, the panel noted that there was "no evidence of a § 2804(a) contract between the BIA and the tribe." *Id.* at n. 2. Section 2804(a) of the ILERA did not authorize the BIA to enter into contracts but instead into MOA. However, the evidence in Oakie showed that the officer had been designated a Deputy Special Officer, a designation created by the regulations implementing the ILERA. Apparently, in the early years after the enactment of the ILERA, implementation was accomplished by issuance of designations only without entering into MOA with the tribe.

In Oakie, the Eighth Circuit confused the issue by referring to § 2804 agreements as contracts. There is a difference between implementation by entering into 638 contracts under § 2805 and implementation by entering into MOA and issuing Deputy Special Officer designations under § 2804. Pursuant to § 2802(d), the BIA was authorized to establish a branch of criminal investigations which is responsible for the investigation and presentment for prosecution of cases involving violations of the Major Crimes Act. Tribes were authorized to enter into 638 contracts for those services in connection with tribal law, 25 U.S.C. § 2805. The ILERA does not authorize those services pursuant to MOA with the tribes.

4

In United States v. Bettelyoun, 16 F.3d 850, 852-53 (8th Cir. 1994), the Eighth Circuit considered a case involving a § 2804 "contract":

> In a § 111 prosecution involving tribal officers, however, the proper allocation of function between the court and the jury is more complex. When the government relies upon 25 U.S.C. § 2804(f) to establish that the assaulted tribal officer is a federal officer for purposes of § 111, the court must determine threshold legal questions - whether the tribal contract, and the manner in which BIA has designated particular tribal officers to perform under that contract, qualify under 25 U.S.C. § 2804(a). But the ultimate issue of fact-whether the assaulted tribal officers were engaged in the performance of duties authorized by the Secretary of Interior at the time of the assault-is still for the jury. In other words, the court should instruct the jury as to the classes of persons who are federal officers under 18 U.S.C. § 1114, as modified by 25 U.S.C. § 2804(f), leaving the jury to decide whether the government proved beyond a reasonable doubt that the assault victims were in fact federal officers who were engaged in the performance of their official duties.

Bettelyoun referred to Oakie as a case demonstrating how the government could prove the federal officer issue in the absence of a "2804(a) contract." United States v. Bettelyoun, 16 F.3d at 853 n.2.

More recently, in United States v. Roy, 408 F.3d 484, 489 (8th Cir. 2005), the Eighth Circuit reaffirmed that the test is as was set forth in Bettelyoun. "Whether an officer in [Adams'] position, i.e., an officer of the [Sisseton Wahpeton Sioux Tribe], qualifies as a federal officer is a 'threshold legal question' for the court. Whether [Adams] himself was such an officer, as well as whether he was engaged in official duties at the time of the incident, are questions of fact for the jury." *Id.* In Roy, as in previous cases, the Eighth Circuit referred to the § 2804 agreements for the provision of law enforcement services as "638 contracts." United States v. Roy, 408 F.3d at 490. Thus, the Eighth Circuit held that the district court's first task "is to determine whether the 638 contract, taking into account the manner in which it delegates the Bureau's law enforcement authority, is sufficient to authorize officers of the [tribe] to exercise the Bureau's law enforcement functions under 25 U.S.C. § 2804(a)." *Id.* If the district court determines that the officer in question was "entitled to federal officer status as a threshold matter," the jury thereafter determines whether the officer was "engaged in the performance of his official duties." *Id.* at 491.

In United States v. Drapeau, 644 F.3d 646, 653 (8th Cir. 2011), the Eighth Circuit, citing Oakie, held that whether the BIA officer "was a federal officer within the meaning of § 111 was a question of law for the court." Whether he "was acting as a federal officer and whether he was performing federal 'investigative, inspection, or law enforcement functions' at the time of the assault or acting outside the scope of his employment, were fact questions for the jury." *Id.* In Drapeau, like Roy, the officer in question was a BIA officer so there was no initial quetion for the district court to answer.

Oakie, Bettelyoun, and Roy hold that the Court determines as a matter of law whether, based upon the evidence at trial, the class of officer (a deputized tribal law enforcement officer in Oakie and a tribal officer acting under a particular 638 contract in Bettelyoun) would qualify as a federal officer. It is ultimately up to the jury whether the particular victim is actually that type of officer. The Drapeau panel seems to have extended Oakie, Bettelyoun, and Roy by holding that the district court determines as a matter of law whether the victim was a federal officer. Perhaps the problem in Drapeau was that the defendant disputed whether the officer was performing his official duties. Whether Drapeau was in fact a federal officer was never an issue because he was in fact a BIA officer.

Defendant in this case seeks dismissal of the indictment, claiming officer Adams was not employed by the BIA and was thus not a federal officer. The government argues that Adams was a federal officer by virtue of a 638 contract. Defendant does not dispute that the tribe and the Secretary entered into a 638 contract pursuant to 25 U.S.C. § 2804. Instead, defendant contends that Adams cannot be afforded § 111 protection because he had not received the BIA Special Law Enforcement Commission ("SLIC"), as required by the contract.

The parties refer to § 2804(a) agreements as 638 contracts just as the Eighth Circuit has done. Perhaps that is how such agreements are in fact designated. Without seeing the agreement, I cannot determine whether the "638 contract" is a valid § 2804(a) agreement. Whether an officer in Adams' position would be classified as a federal officer is for the court after hearing evidence at trial. If the 638 contract would qualify an officer in Adams' position for protection under § 111 as a federal officer, it is for the jury whether Adams is in fact such an

officer and whether he was performing a federal law enforcement function at the time of the assault.

Defendant argues that, as a matter of law, Adams cannot qualify as a federal officer under the terms of the 638 contract because he did not comply with the terms of the contract requiring that he have an SLEC. Thus, he would not have protection under § 111 by virtue of a valid 638 contract. The issuance of a law enforcement commission from the BIA is consistent with the regulations, 25 C.F.R. Part 12. "Tribal law enforcement officers operating under a BIA contract or compact are not automatically commissioned as Federal officers; however, they may be commissioned on a case-by-case basis." 25 C.F.R. § 12.21(b).

Whether or not a special commission or designation is required by statute, the regulations, or by the § 2804 agreement (or 638 contract), such designation is not, as a matter of law, a prerequisite for the officer in question to be considered a federal officer for the purposes of 18 U.S.C. § 111 and 1114. The Eighth Circuit held in Roy that, although the regulations required that the officer attend a BIA basic law enforcement training course prior to performing law enforcement duties, the regulation did not specifically state that failure to do so prohibits an officer from qualifying for federal officer status under 18 U.S.C. § 111, and absent a Department of the Interior interpretation to the contrary, the court would not require compliance with the regulation as a prerequisite for federal officer status. United States v. Roy, 408 F.3d at 490-91.

> The regulation does not so state, and such a holding would be inconsistent with the purpose behind 18 U.S.C. § 111: "to protect both federal officers and federal functions." *See Schrader*, 10 F.3d at 1351 (*quoting United States v. Feola*, 420 U.S. 671, 679, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975)) (emphasis in original).

*Id.*

If complying with the regulation is not required, then complying with any specific terms of a § 2804 agreement is also not required. Indeed, the Eighth Circuit has held that all that is required is that the officer be "engaged in the performance of his official duties." United States v. Roy, 408 F.3d at 491. In United States District Judge Roberto Lange has explained that tribal officers employed through a contract with the BIA are federal officers under 18 U.S.C. § 111 as are officers not acting under a contract but who are otherwise "deputized to perform federal

7

functions - even without a 638 contract." United States v. Medearis, 775 F. Supp.2d 1110, 1119-20 (D.S.C. 2011).

The questions raised by the motion deal with elements of the alleged crime - to be proven beyond a reasonable doubt at trial.

Based upon the foregoing,

IT IS ORDERED that the defendant's motion, Doc. 12, to dismiss is denied.

Dated this 30th day of December, 2011.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: Barbara J. Poeppe
DEPUTY
(SEAL)